UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KIERA D.,                                                                                  22-CV-00468-MJR
                                                                                            DECISION AND ORDER
                Plaintiff,

-v-

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

      Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 12)

      Plaintiff Kiera D.[1] ("Plaintiff") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "defendant") denying her application for Supplemental Security Income ("SSI") pursuant to the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. For the following reasons, Plaintiff's motion (Dkt. No. 5) is denied, and defendant's motion (Dkt. No. 9) is granted.

## BACKGROUND[2]

      Plaintiff filed protectively for SSI on December 16, 2019, with an alleged onset date of January 1, 2010. (Administrative Transcript ["Tr."] 213-20). The claim was initially denied, and was denied again upon reconsideration. (Tr. 65-94). Plaintiff

---

[1] In accordance with the District's November 18, 2020, Standing Order, plaintiff is identified by first name and last initial.

[2] The Court presumes the parties' familiarity with Plaintiff's medical history, which is summarized in the moving papers.

filed a timely request for an administrative hearing. (Tr. 112-14). On July 9, 2021, Administrative Law Judge ("ALJ") Sharda Singh held a video hearing, at which Plaintiff participated, with counsel. (Tr. 33-64). Plaintiff's mother and a vocational expert also testified. On September 7, 2021, the ALJ issued an unfavorable decision (Tr. 12-32). On April 21, 2022, the Appeals Council denied Plaintiff's request for review. (Tr. 1-6). This action followed.

## DISCUSSION

### I.   *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential.  Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted).  "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (quoting *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §§423(d)(2)(A), 1382c(a)(3)(B). The

Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (quoting *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that work "is substantial gainful activity." *Id.* §§404.1520(b), 416.920(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* §§404.1520(b), 416.920(b). Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §§404.1520(c), 416.920(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* §§404.1520(c), 416.920(c). As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* §§404.1520(c), 416.920(c). Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §§404.1520(d), 416.920(d). If the claimant satisfies both

requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.* §§404.1520(d), 416.920(d).

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §§404.1520(e), 416.920(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §§404.1545(a)(1), 416.945(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the claimant's] past relevant work." *Id.* §§404.1520(f), 416.920(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* §§404.1520(f), 416.920(f). Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §§404.1520(g)(1), 416.920(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* §§404.1520(g)(1), 416.920(g)(1). If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.* §§404.1520(g)(1), 416.920(g)(1).

The burden through steps one through four described above rests on the claimant. If the claimant carries his burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. *The ALJ's Decision*

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 16, 2019, the application date. (Tr. 17). At step two, the ALJ found that Plaintiff has the following severe impairments: autistic disorder; attention deficit hyperactivity disorder ("ADHD"); major depression; post-traumatic disorder ("PTSD"); and social anxiety/phobia disorder. (Tr. 17-18). At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19).

Prior to proceeding to step four, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels with the following non-exertional limitations: can only perform simple repetitive routine tasks with occasional interaction with supervisors, coworkers and the general public; and needs to avoid extreme heat. (Tr. 19-25). At step four, the ALJ found that Plaintiff did not have any past relevant work. (Tr. 25). The ALJ then proceeded to the fifth and final step, where he found that Plaintiff can perform other work that exists in significant numbers in the national economy. (Tr. 25-26). Thus, the ALJ concluded that Plaintiff was not disabled. (Tr. 26).

IV.   *Plaintiff's Challenge*

Plaintiff argues that the case must be remanded because: (1) the ALJ erred by impermissibly basing her mental RFC finding on her own lay interpretation of the record; (2) the ALJ erred by failing to evaluate the impact of the stress of working full time on Plaintiff's RFC; and (3) the ALJ erred by failing to discuss evidence that was favorable to Plaintiff's claim. The Court finds these arguments without merit.

The ALJ's consideration of Plaintiff's mental limitations was supported by substantial evidence. The ALJ concluded that Plaintiff could perform a range of work at all exertional levels, which involved simple, repetitive, routine tasks, and occasional interaction with supervisors, coworkers, and the general public. (Tr. 19-25). Substantial evidence supported the ALJ's finding, including the assessments of consulting psychological examiner Dr. Christine Ransom, Ph.D., and State agency psychologists, Drs. J. May, PhD., and L. DeKeon, Ph.D., as well as Plaintiff's treatment notes, which consistently documented unremarkable mental status examination findings. (*See* Tr. 66-89, 71-73, 562-65).

Plaintiff argues that the mental limitations assessed by the ALJ did not precisely mirror any medical opinion. However, this was not required; what is determinative is that there was substantial evidence supporting the RFC. *See Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (explaining that an "ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence"); *Pellam v. Astrue*, 508 F. App'x 87, 90 n.2 (2d Cir. 2013) (affirming the ALJ's RFC determination, which was "largely supported" by a physician's opinion, even where the ALJ did not credit all of the physician's findings).

Dr. Ransom's opinion that Plaintiff did not have any limitations performing tasks consistent with unskilled work, as well as the other medical evidence of record, such as Plaintiff's numerous normal mental status findings, provided ample support for the ALJ's RFC determination. (Tr. 19-25; *see* Tr. 489, 491, 556, 562-65, 608, 610, 612, 614-616, 618, 620, 622, 826-43). While the ALJ assessed somewhat greater limitations than Dr. Ransom (based on the ALJ's review of the entire record), this was proper. *See Ramsey v. Comm'r of Soc. Sec.*, 830 F. App'x 37, 39 (2d Cir. 2020) (upholding RFC determination, where the ALJ occasionally "deviated from consultative examiners' recommendations to decrease [the claimant's] RFC based on other evidence in the record"); *Beckles v. Comm'r of Soc. Sec.*, No. 18-CV-321, 2019 WL 4140936, at *5 (W.D.N.Y. Aug. 30, 2019) (finding that although ALJ did not fully adopt a consultative examiner's opinion, this opinion nonetheless supported the RFC).

Plaintiff also argues that the ALJ did not discuss the notation by psychotherapy counselor Meegan Stamm, MSW, LCSW, that Plaintiff would have difficulty due to social anxiety and that her mental health symptoms would increase if she were working full-time. (Tr. 850). However, "an ALJ is not required to discuss every piece of evidence submitted," and the "ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 2D Cir. 2012); *see also Bennett v. Comm'r of Soc. Sec.*, No. 22-CV-281, 2023 WL 355156, at *3 (2d Cir. Jan. 23, 2022) (holding that an ALJ does not need to "explain the weight afforded to every issued discussed in a treating physician's opinion").

Further, the decision reflects that the ALJ expressly considered that Plaintiff had social anxiety and accommodated this difficulty by limiting her to work that involves only occasional interaction with supervisors, co-workers, and the general public. (Tr. 18-19, 23-24; see Tr. 846); see also Brault, 683 F.3d at 448 ("An ALJ does not have to state on the record every reason justifying a decision."); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (explaining that an ALJ is not required "explicitly to reconcile every conflicting shred of medical testimony").

To extent that Plaintiff argues that Ms. Stamm's notation required further restrictions, this was arguably not borne out by the record. As the ALJ noted, Plaintiff's treating providers consistently described her as cooperative and pleasant. (See, e.g., Tr.489,564, 610, 826). The ALJ also noted that Dr. Ransom similarly observed that Plaintiff was cooperative and socially appropriate. (Tr. 24, referring to Tr. 563). Moreover, Plaintiff reported to Dr. Ransom that, although she avoided crowds, she was socializing adequately in college and making friends. (Tr. 24; see Tr. 564).

Though Plaintiff argues that there was conflicting evidence in the record concerning her functioning, it was the role of the ALJ to reconcile such conflicts, which the ALJ appropriately did in this case. (Tr. 19-25); see Veino v. Barnhart, 312 F.3d 578,588 (2d Cir. 2002)(explaining that "genuine conflicts in the medical evidence are for the Commissioner to resolve");Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("It is for the SSA, and not this court, to weigh the conflicting evidence in the record"). The medical evidence cited throughout the ALJ's decision and in the record showed that Plaintiff engaged in a wide range of activities, including successfully completing college courses and maintaining a part-time job, and had many normal mental status

examination findings. (*See* Tr. 489, 491, 556, 562-65, 608, 610, 612, 614-22, 826-43). Plaintiff argues that there was other evidence that could have been evaluated differently, but under the deferential standard of review, even "[i]f the evidence [wa]s susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). The ALJ considered the objective medical and opinion evidence of record, and her evaluation of Plaintiff's impairments and their resulting limitations is entitled to deference.

Contrary to Plaintiff's argument, the ALJ properly considered Plaintiff's ability to handle stress when evaluating her functioning. (Tr. 22-23). Notably, the ALJ accommodated Plaintiff's mental health conditions, including her stress-related symptoms, by limiting her to simple, repetitive, and routine work with only occasional interaction with supervisors, co-workers and the general public. (Tr. 19); *see Thomas W. v. Comm'r of Soc. Sec.*, 20-CV-1010, 2021 WL 3513840, at *4 (W.D.N.Y. Aug. 10, 2021) (explaining that an RFC limiting a claimant to occasional interaction with co-workers and the public and the performance of simple, routine tasks may account for his stress-related limitations) (also collecting cases); *see also Moxham v. Comm'r of Soc. Sec.*, No. 3:16-CV-1170, 2018 WL 1175210, at *10 (N.D.N.Y. Mar. 5, 2018) (holding that a limitation to "simple tasks and instructions, decisions on simple work-related matters, and frequent interaction with others" adequately accounted for the plaintiff's stress-related limitations). An RFC determination may adequately account for a person's stress-related limitations even without explicitly mentioning stress in the RFC finding. *Ridosh v. Berryhill*, No. 16-CV-6466, 2018 WL 6171713, at *4 (W.D.N.Y. Nov. 26, 2018).

As the ALJ noted, Dr. Ransom considered Plaintiff's mental health symptoms and reported difficulties with school and work but, nonetheless, found that she did not have any limitations in the areas relevant to basic work activity. (Tr. 24; *see* Tr. 562-65). Similarly, the State agency psychologists, Drs. May and DeKeon, considered Plaintiff's mental conditions and related treatment and assessed no more than mild limitations. (Tr. 72, 84). Plaintiff's psychiatrist, Dr. Joshua S.Russell, M.D., likewise noted Plaintiff's "positive strides" during several treatment visits. (*See, e.g.,* Tr. 617, 623). All of this evidence supported the ALJ's finding.

It is not enough for Plaintiff to merely disagree with the ALJ's viewing of the persuasiveness of the evidence or to argue that the evidence in the record *could* support her position. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) ("[W]hether there is substantial evidence supporting the appellant's view is not the question here; rather, we must decide whether substantial evidence supports *the ALJ's decision*.") (emphasis in original). Plaintiff is required to show that no reasonable factfinder could have reached the ALJ's conclusions based on the record. *See Brault*, 683 F.3d at 448. Plaintiff's arguments fall short of showing that any reasonable factfinder would be compelled to assess functional limitations more restrictive than the ALJ already accounted for in the RFC finding.

Finally, Plaintiff asserts the ALJ should have discussed a level of care eligibility redetermination by Tammie Schreiner, a Qualified Intellectual Disabilities Professional with a regional office of the New York State's Office for People with Developmental Disabilities. (Tr. 814-15). However, as this form was a decision by another governmental agency, the ALJ properly did not discuss it, in accordance with agency regulations. 20 C.F.R. § 416.904. As agency regulations note, such

determinations are based on the other agency's "own rules" and, thus, are not binding on SSA. 20 C.F.R. § 416.904.

## CONCLUSION

For the above reasons, Plaintiff's motion for judgment on the pleadings (Dkt. No. 5) is denied and defendant's motion for judgment on the pleadings (Dkt. No. 9) is granted.

The Clerk of Court shall take all steps necessary to close this case.

**SO ORDERED.**

Dated:   December 16, 2024
         Buffalo, New York

_____
MICHAEL J. ROEMER
United States Magistrate Judge